UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON COOK                         :
                                   :
        v.                         :        C.A. No. 09-169S
                                   :
A.T. WALL, et al.                  :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72(a)) is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (Document No. 31). Plaintiff objects. (Document No. 33). A hearing was held on April 5, 2012. For the following reasons, I recommend that Defendants' Motion to Dismiss be GRANTED in part and DENIED in part.

### Facts

In his Verified First Amended Complaint (Document No. 26), Plaintiff sues eleven officials, employees and correctional officers of the Rhode Island Department of Corrections ("RIDOC") in both their individual and official capacities under 42 U.S.C. § 1983, and state constitutional and tort law. Plaintiff also sues the RIDOC itself.

The essence of Plaintiff's Amended Complaint is that Defendants engaged in a series of unconstitutional and unlawful acts in retaliation for Plaintiff's public criticism of a new RIDOC policy and other subsequent protected activity. In particular, on October 22, 2007, an article was published in The Providence Journal entitled "ACI inmate protests new restrictions on

publications." (Document Nos. 26-1 at p. 2).  In the article, Plaintiff was critical of a new RIDOC policy restricting inmate access to books and other publications ordered and paid for by friends and relatives, i.e., gift subscriptions.  Id.  The article indicates that the policy change "prompted a crusade" by Plaintiff and quotes the following from his letter to A.T. Wall: "Come on, these are books.  If anything, you should be helping us to find new ways to get them and encouraging the inmate population to start reading more."  Id.  In addition, the article reported that the policy change was challenged by the Rhode Island Affiliate of the American Civil Liberties Union ("RIACLU").  Id. at p. 3.  On April 11, 2008, the new policy was rescinded by the RIDOC.  (Document No. 26-2 at p. 12).

Shortly after the October 22, 2007 article, Plaintiff alleges that he was fired from his prison kitchen job by Defendant Izzo "under the pretext that [Plaintiff] was caught on a video camera stealing state property." (Document No. 26, ¶ 19).  He alleges that Defendant Meunier found him guilty on October 30, 2007 before viewing the video recording.  Id. at ¶ 20.  Plaintiff alleges that Defendant Meunier later told him on November 7, 2007 that he viewed the video tape, and it showed that Plaintiff had "done nothing wrong" but Plaintiff asserts that his attempts to appeal and obtain compensation for the resulting lost wages and good time were unsuccessful. Id., ¶¶ 20-23.

On February 20, 2008, the RIACLU wrote to the RIDOC regarding its concerns about the recently adopted policy barring "gift subscriptions" and advised that its Legal Committee has recommended a legal challenge to the policy.  (Document No. 26-1 at p. 18).  The letter was copied to Defendant Wall and Plaintiff.  Id. at p. 19.  Plaintiff alleges that, shortly thereafter

during a module wide shakedown, Defendants Lawson and Nakhlis "violently direct[ed] and/or conduct[ed] a search of [Plaintiff's] cell and destroy[ed] his personal property, including his food items." (Document No. 26, ¶ 24). Plaintiff complained about the manner in which the search was conducted. Id., ¶ 25, Ex. 6. Plaintiff alleges that the RIDOC Chief Investigator told him "to inform other inmates in his module with similar complaints regarding the search to direct complaints to him." Id., ¶ 26. Accordingly, Plaintiff further alleges that, on or about March 3, 2008, he posted "a notice on an inmate bulletin board informing other inmates that any complaints they might have regarding the violent search should be directed to the Investigator." Id., ¶ 27.

On or about March 4, 2008, Plaintiff alleges that Defendant Lawson removed his posting and disciplined him for "engaging in or encouraging a group demonstration and/or activities." Id., ¶ 28. Plaintiff contends that he was strip searched, taken to segregation and "booked," i.e., charged, two days later on March 6, 2008. Id.

Subsequently, Plaintiff asserts that a disciplinary board hearing with Defendant Jankowski was repeatedly postponed on or about March 7, 2008, March 11, 2008 and March 14, 2008. Id., ¶ 29. Plaintiff states that he submitted appeals to both Defendant Boyd and Defendant Jankowski protesting his situation. Id. After two weeks of segregation, Plaintiff asserts that he finally was given a hearing, on or about March 18, 2008, where he was unable to present and/or question witnesses, and Defendant Jankowski failed to present any material evidence against him. Id. After Plaintiff was found guilty and sanctioned with thirty days in segregation, the loss of thirty days of good time and the recommendation to be downgraded to the more restrictive

-3-

maximum security facility, Plaintiff contends that Defendant Jankowski turned off the tape recorder and said to him that "this is what happens when you get the ACLU involved in our business." Id.  Plaintiff alleges that he unsuccessfully appealed to Defendant Boyd.  Id., ¶ 30.

In a letter dated April 7, 2008, the RIACLU wrote to Defendant Boyd and requested that all copies of recordings of Plaintiff's disciplinary hearings be retained.  Id., ¶ 31, Ex. 11.  Shortly thereafter, in a memo dated April 11, 2008, the RIDOC rescinded the policy change that Plaintiff and the RIACLU had publicly criticized.  Id.

On or about May 30, 2008, Plaintiff alleges that he was once again strip searched and thrown into segregation under the pretext that he wrote a threatening letter to the Parole Board. Id., ¶ 32, Ex. 12.  A June 5, 2008 report from the Special Investigation Unit promised that a Classification Board will convene to address Cook's status in segregation.  Id.  Plaintiff asserts that no Board was convened, and he stayed in segregation for eighteen days.  Id.  On or about June 17, 2008, Plaintiff sent a grievance to Defendant Boyd protesting his placement in segregation, and Boyd responded to Plaintiff with a memo stating that Plaintiff was put into segregation, for security reasons, pending an investigation.  Id., ¶ 33, Ex. 13.  On June 17, 2008, Plaintiff was released from segregation.  Id.

On or about September 8, 2008, Plaintiff sent a letter to Director Wall protesting the lack of a response to his grievances.  Id., ¶ 34, Ex. 14.  Two days later, Plaintiff asserts that he was subjected to a strip search, and his cell was searched by Defendants Freeman and Lawson and his property destroyed. Id., ¶ 35.  Plaintiff contends that they looked through his legal materials during the search and asked him if he had communicated further with any Providence Journal

reporters.  Id.  Shortly thereafter, Plaintiff contends that he was again strip searched and thrown into segregation, where he stayed for four more days.  Id.  Plaintiff sent a letter and a grievance directly to Defendant Boyd, who he claims failed to respond.  Id., Ex. 15.

On or about May 14, 2009, after this lawsuit was filed, Plaintiff alleges that Defendant Isom informed Plaintiff that she was moving him into a notorious and less safe cell block and said, "[g]rieve that motherf__er."  Id., ¶ 36.  The next day, upon learning of complaints from Plaintiff about her actions, Defendant Isom caused Plaintiff to be sent to segregation for seven days on the allegation that he was distributing his attorney's business card and thereby creating a disturbance.  Id.  While in segregation, Plaintiff lost wages.  Id.  Soon thereafter, Plaintiff asserts that the allegation that he created a disturbance was found to be "without merit."  Id., Ex. 16.

**Dismissal Standard**

Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, see Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995).  If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied.  Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).

While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation.  See Bell Atl. Corp. v.

Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)).  "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559). See also Ashcroft v. Iqbal, 556 U.S. 662, 679 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but instead, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 30 (1st Cir. 2010).

**Discussion**

**A.     First Amendment Retaliation**

In Count I, Plaintiff alleges that Defendants violated his First Amendment rights[1] by retaliating against him in various ways for "publicly criticizing policy changes at the [RIDOC]," his "affiliation with the RI ACLU," for "posting [ ] a notice on a bulletin board," for "writing a letter of protest to the Parole Board," for "his filing of grievances," and for "distributing his attorney's business card."  (Document No. 26, ¶¶ 40-49).  However, in his brief, Plaintiff describes his constitutionally protected conduct as "three-fold": (1) his public statements reported in The Providence Journal regarding the policy change on books and other publications; (2) the bulletin board posting about grievances regarding cell searches; and (3) filing this lawsuit.

---

[1] In Count V, Plaintiff also alleges that this alleged retaliation violated his free speech rights under Article 1, § 21 of the Rhode Island Constitution.

(Document No. 33 at p. 14).   Defendants read Count I a bit more narrowly and contend that Plaintiff only claims constitutional protection for two separate acts: "the story in the Providence Journal concerning his objection to a mail policy; and his posting on the bulletin board encouraging other inmates to file complaints."  (Document No. 31 at p. 8).   Defendants then argue, relying solely upon Cossette v. Poulin, 573 F. Supp. 2d 456 (D.N.H. 2008), that inmates do not enjoy the same scope of First Amendment rights as the general public and that Plaintiff's retaliation claim should be dismissed because he "did not engage in constitutionally protected behavior in the first instance."  Id. at pp. 8-9.   While Defendants are generally correct as to the more limited scope of inmate rights, Defendant's primary argument on the second point is easily dispatched.

In Cossette v. Poulin, supra, an inmate brought a First Amendment retaliation claim against prison officials alleging that he was removed from a prison job in the law library in retribution for giving a written statement to another inmate in support of the other inmate's planned lawsuit against the prison librarian for overcharging him for photocopies.  "To prevail on a retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Cossette, 573 F. Supp. 2d at 459 (quoting Davis v. Goord, 320 F.3d 346, 352 (2nd Cir. 2003)).  The Court in Cossette held that the statement in question dealt with a matter of purely individual economic importance and not a matter of public concern related to broader prison policies.  Id. at 461, 464. Thus, it concluded that the inmate was not engaged in activity protected by the First Amendment

and granted summary judgment in favor of the prison officials.  Id. at 465.  See also Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011) (holding that in order to survive summary judgment on a retaliation claim, a prisoner "must make out a prima facie case by adducing facts sufficient to show that he engaged in a protected activity").

Here, Defendants are attacking Count I under Fed. R. Civ. P. 12(b)(6) and not under Fed. R. Civ. P. 56 as did the defendants in the Cossette case.  Thus, the Court must accept Plaintiff's well-plead allegations as true, and there is no evidentiary record at this stage upon which to assess the particular content, form and context of Plaintiff's alleged protected speech. See Farhat v. Jopke, 370 F.3d 580, 590 (6th Cir. 2004) (describing the protected speech question as "highly fact-specific").  For instance, in this case, the exact content of the bulletin board posting is not quoted in the Complaint, and a copy is not attached as an exhibit to the Complaint.  Plaintiff describes it as a notice "informing other inmates that any complaints they might have regarding the violent search should be directed to the Investigator" and that he did so because he was told by the Investigator to "inform other inmates in his module with similar complaints regarding the search to direct complaints to him."  (Document No. 26, ¶¶ 26-27).  Despite these clear allegations which must be accepted as true at this stage, Defendants describe Plaintiff's allegations as related to a posting "encouraging other inmates to file complaints."  (Document No. 31 at p. 8).  Obviously, there is a factual distinction between the informational posting described in the Complaint and the encouraging posting described in Defendants' brief.

Unlike the speech at issue in Cossette, the speech here was not solely concerning a personal matter of purely individual interest.  Rather, Plaintiff alleges that he publicly criticized

a new prison policy applicable to inmates generally, informed other inmates where to direct complaints about a module-wide search, and filed a civil rights lawsuit seeking redress for alleged retaliation at the hands of prison officials.  Plaintiff's allegations are sufficient at this stage to state a claim that he engaged in constitutionally protected behavior.  See Pearson v. Welborn, 471 F.3d 732, 740 (7th Cir. 2006) (holding that statements by an inmate designed to urge a change in prison policy are deserving of First Amendment protection); Hannon, 645 F.3d at pp. 48-49 (holding that an inmate, in filing his own grievances and legal actions, "plainly engaged in protected activity" but recognizing that other activities, "such as organizing...fellow inmates and providing legal assistance to them," is accorded lesser protection); and Montoya v. Bd. of Cnty. Comm'rs, Chaffee Cnty., 506 F. Supp. 2d 434, 447 (D. Colo. 2007) (undisputed that an inmate engaged in constitutionally-protected activity when he spoke to press about a taser incident).  Thus, I recommend that Defendants' Motion to Dismiss Counts I and V (as it relates to Article 1, § 21 of the R.I. Constitution) be DENIED.

## B.    Due Process Claims

In Count II, Plaintiff alleges that the actions of Defendants (excepting Defendant Nakhlis) violated his rights under the "Fifth and Fourteenth Amendment...in that the defendants acted arbitrarily, capriciously and without permissible guidelines thereby denying to Plaintiff the right to procedural and substantive due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution."  (Document No. 26 at p. 19).  In particular, Plaintiff alleges that his due process rights were violated in connection with the loss of his prison job, and by being placed in disciplinary segregation "without substantial evidence" on or about

March 4, 2008, May 30, 2008, September 11, 2008 and May 15, 2009. Id. at pp. 17-18. He also claims that the "detentions, prosecutions, searchings [sic] and multiple charges brought against the Plaintiff were not brought in good faith, but rather, were brought by the Defendant Wall and those acting in concert with him in bad faith to harass the Plaintiff and interfere with his right to due process." Id. at p. 18.

Defendants move to dismiss this Count arguing that the deprivations he alleges, such as loss of a kitchen job and disciplinary segregations of less than thirty days, "do not rise to the level afforded constitutional protection." (Document No. 31 at p. 11). To state a due process violation, an inmate must demonstrate a deprivation of a life, liberty or property interest. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The Supreme Court has made clear that the liberty interests of prison inmates are "generally limited to freedom from restraint" imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In Sandin, the Supreme Court explained that "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed'" and held that a prisoner's punishment of thirty days in disciplinary segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 480, 486.

Plaintiff does not directly counter Defendants' argument that the deprivations he alleges do not rise to the level afforded constitutional due process protection and thus this argument is unopposed. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments

-10-

squarely and distinctly, or else forever hold its peace."). Rather, Plaintiff contends that his alleged deprivations are "certainly actionable within the context of a retaliation claim." (Document No. 33 at p. 21).[2] Plaintiff asserts that "the Courts have been clear that actions, which standing alone do not violate the constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." (Document No. 33 at p. 21 citing Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999); and L'Heureux v. Whitman, 1997 U.S. App. LEXIS 27942 (1st Cir. 1997)). As stated below, Count I states a claim that Plaintiff was the subject of retaliation for exercising his First Amendment rights. Thus, since Plaintiff makes clear in his brief that Count II is also a retaliation claim, it is redundant of Count I.

Further, in the portion of his brief addressing Count II, Plaintiff asserts that "since the loss of [his] job, wages, good time, property and liberty are properly construed within a First Amendment retaliation claim, [his] claims [in Count II] are actionable." (Document No. 33 at p. 22) (emphasis added). However, this statement underscores that Plaintiff is not actually asserting any independent due process claims, and Count II is a flawed attempt to dress his First

---

[2] In defending Count II, Plaintiff also references the so-called Morris Rules. The Morris Rules are procedures governing internal disciplinary and classification matters at the ACI. See Doctor v. Wall, 143 F. Supp. 2d 203, 206-208 (D.R.I. 2001). In particular, Plaintiff argues that, "since [he] has alleged a sufficient federal constitutional violation with his retaliation claim, [his] allegations of violations of the Morris Rules are properly before this Court." (Document No. 33 at p. 24). The flaw in Plaintiff's argument is that, while the Morris Rules are mentioned once in Count II at paragraph 55, Plaintiff never actually alleges any violation of the Morris Rules as part of his substantive claim in Count II. Count II is captioned as a claim under 42 U.S.C. § 1983 for the violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and alleges that Defendants' conduct was a violation of Plaintiff's "due process rights and displayed both deliberate indifference and a reckless disregard of [Plaintiff's] constitutional rights." (Document No. 26 at p. 17).

Amendment retaliation claim in Due Process clothing.[3]   Thus, I recommend that Defendants'

Motion to Dismiss Counts II and V (as it relates to Article 1, § 2 of the R.I. Constitution) be

GRANTED.

### C.   Eighth Amendment

In Count III, Plaintiff alleges that the actions of Defendants (excepting Defendants Izzo,

Nakhlis and Meunier) in booking, disciplining and placing him in segregation on four occasions

without substantial evidence violated the Eighth Amendment's prohibition against cruel and

unusual punishment.   Defendants assert that Plaintiff has failed to state a viable Eighth

Amendment claim.

Plaintiff contends that his allegations of "repeated strip searches of his body" and a

violent cell search within the context of retaliation state a claim under the Eighth Amendment.

(Document No. 33 at p. 27).   However, Count III does not refer to the strip searches or the cell

search and is based solely on his allegations that he was subject to multiple disciplinary

detentions without substantial evidence in violation of "[his] Eighth Amendment rights and [that

Defendants] displayed both deliberate indifference and a reckless disregard of [his] constitutional

rights."   (Document No. 26 at pp. 20-21).   Count III also alleges that such actions deprived

Plaintiff of his prison job, wages, good-time and liberty, and caused him to suffer "irreparable

harm because the defendants' cruel and unusual punishment has penalized and threatened to

---

[3]   In his brief, Plaintiff emphasizes that "[a]t the heart of [his] complaint is the assertion that he was unconstitutionally deprived of his First Amendment rights when defendants engaged in retaliatory conduct as a result of his" allegedly constitutionally protected activity.  (Document No. 33 at p. 12).  His retaliation claim is plainly stated in Count I, and it becomes more complicated, rather than stronger, when Plaintiff tries to shoe horn it into other provisions of the Constitution.

penalize the Plaintiff when he is engaging in activities that are protected by the First and Fourteenth Amendments to the United States Constitution." Id.

"Generally speaking, '[a]fter incarceration, only the unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Skinner v. Cunningham, 430 F.3d 483, 488 (1st Cir. 2005) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  "The critical question in such a case is whether the force was applied 'maliciously and sadistically for the very purpose of causing harm'...rather than 'in a good-faith effort to maintain or restore discipline.'" Id. (quoting Whitley, 475 U.S. at 320-321 and Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  Here, Plaintiff does not allege any physical injury in Count III.  He seeks damages for "lost wages, lost goodtime, mental anguish and emotional distress" and an injunction restraining Defendants from sending him to segregation and continuing to prosecute him on baseless charges.  (Document No. 26 at pp. 21-22).  Further, contrary to Plaintiff's brief, he does not specifically allege in Count III that his Eighth Amendment claim is based upon repeated strip searches or a violent cell search.  Plaintiff has not alleged sufficient facts of "wanton infliction of pain" in Count III to state a plausible Eighth Amendment claim. A reasonable reading of Count III is that it is, yet again, a flawed attempt by Plaintiff to dress his First Amendment retaliation claim in Eighth Amendment clothing.  Accordingly, I recommend that Defendants' Motion to Dismiss Count III be GRANTED.

### D.    Supervisory Liability

In Count IV, Plaintiff alleges that Defendants Wall, Boyd, Auger and Kaszyk, as RIDOC Supervisors, acted with reckless disregard and deliberate indifference in the hiring, screening and

-13-

training of Defendant Correctional Officers Izzo, Nakhlis, Meunier, Jankowski, Freeman and

Lawson, and that their failure to provide adequate training, education and discipline has resulted

in the denial of his constitutional rights.  Defendants move to dismiss, arguing that there is no

supervisory or <u>respondeat superior</u> liability under 42 U.S.C. § 1983 and that Plaintiff has not

alleged sufficient facts to state a claim that there is a causal link between the alleged acts or

omissions of the Supervisory Defendants and the alleged misconduct of their subordinates.

Plaintiff counters that he is not making a <u>respondeat superior</u> claim and that he alleges "sufficient

factual matter that is plausible on its face that the supervisory defendants had an affirmative role

in the retaliation against [him]."  (Document No. 33 at p. 28).

As Plaintiff concedes, "a defendant supervisor cannot be held liable for the constitutional

violations of a subordinate merely by virtue of the defendant's status as supervisor." <u>Feliciano</u>

<u>v. DuBois</u>, 846 F. Supp. 1033, 1045 (D. Mass. 1994) (<u>citing</u> <u>City of Canton v. Harris</u>, 489 U.S.

378, 385 (1989)).  The supervisor "must be shown to have been in some manner personally

involved in the alleged deprivation of rights."  <u>Id.</u>  "It must be shown that the supervisor's

conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of

others." <u>Gutierrez-Rodriguez v. Cartagena</u>, 882 F.2d 553, 562 (1st Cir. 1989).

Here, in Count IV, Plaintiff alleges in conclusory fashion that the failure of the

Supervisory Defendants to adequately screen, train and discipline the subordinate Defendants

resulted in the denial of his constitutional rights.  However, Plaintiff also directly sues each of

the Supervisory Defendants (Director Wall, Warden Boyd and Deputy Wardens Auger and

Kaszyk) in his substantive counts alleging their direct involvement in his various constitutional

and tort claims.  Thus, Count IV is duplicative and unnecessary.  In addition, even if not duplicative, Plaintiff's independent allegations of supervisory liability in Count IV are conclusory and not supported by any well-pleaded factual allegations.  Without any factual support, Plaintiff alleges that the Supervisory Defendants failed to adequately screen, train and discipline the six subordinate Defendants and that such failure resulted in the constitutional violations he alleges.  These are the kind of "conclusory allegations" and "threadbare recitals" that the Supreme Court instructed do not "unlock the doors of discovery."[4]  See Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).  Accordingly, I recommend that Defendants' Motion to Dismiss Count IV be GRANTED.

### E.   Habeas Corpus

In Count VII (captioned Writ of Habeas Corpus), Plaintiff alleges that Defendants violated the Constitution and laws of the United States of America by detaining, confining and segregating him without substantial evidence and in retaliation for exercising his First Amendment rights.  Plaintiff's Amended Complaint does not cite the statutory or other legal basis for his habeas corpus claim.  In his brief, Plaintiff cites DeWitt v. Wall, 121 Fed. App. 398, 399 (1st Cir. 2004), for the proposition that he can only obtain restoration of good-time credits in a habeas action.  However, Plaintiff's counsel conceded at the hearing that Plaintiff had completed the term of incarceration at issue in this case and had been released from custody.[5]

---

[4] This caution is particularly appropriate here as discovery regarding Plaintiff's conclusory claims in Count IV would go well beyond the facts surrounding his alleged protected activity and the alleged retaliatory acts but would potentially open the door to full-blown discovery of the RIDOC's hiring, training, supervisory and disciplinary practices.

[5] Plaintiff has apparently returned to prison due to subsequent criminal charges.  See State v. Cook, P2-2011-3439 ADV and P2-2012-0214A.

Thus, Plaintiff's claim to restore good-time credits and adjust his release date is moot, and Plaintiff states no viable claim cognizable under 28 U.S.C. § 2254 that he is presently in state custody in violation of the Constitution.  See Simon v. United States, 70 F.3d 1252, 1995 WL 709643 at *1 (1st Cir. 1995) (claim for restoration of good-time credits was mooted by petitioner's release from custody); and Taylor v. Collins, 464 F. Supp. 2d 86, 88 (D.R.I. 2006) (same).  Further, it makes no sense that a released inmate could "bank" restored good-time credits to use in a future incarceration since the award of good-time is discretionary and dependent on good behavior (R.I. Gen. Laws § 42-56-24), and Plaintiff has shown no legal basis for such an award.  See Bailey v. Southerland, 821 F.2d 277, 278 (5th Cir. 1987) (habeas petition seeking restoration of good-time credits was mooted by petitioner's release from custody because good-time credits do not carry over to a subsequent incarceration).  Accordingly, I recommend that Defendants' Motion to Dismiss Count VII be GRANTED.

F.      Exhaustion

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title...by a prisoner...until such administrative remedies as are available are exhausted."  "Section 1997e requires an inmate to exhaust all available administrative processes before filing a federal lawsuit relating to the conditions of his or her confinement, even if some or all of the relief the inmate seeks is not available through the administrative process."  Young v. Wall, C.A. No. 03-220S, 2006 WL 858085 at *2 (D.R.I. Feb. 27, 2006) (citing Booth v. Churner, 532 U.S. 731, 734 (2001)).  "The PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002) "Non-exhaustion of administrative remedies is an affirmative defense, and the defendants bear the ultimate burden of pleading and proving non-exhaustion." Maraglia v. Maloney, C.A. No. 2001-12144-RBC, 2006 WL 3741927 at *1 (D. Mass. Dec. 18, 2006) (citing Casanova v. Dubois, 304 F.3d 75, 77 n.3 (1st Cir. 2002)).  "When the party moving for summary judgment bears the burden of proof on an issue, that party cannot prevail 'unless the evidence that [it] provides on that issue is conclusive.'" Id. (quoting Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998)).

In his Verified Amended Complaint, Plaintiff affirms that "[e]ach and all of [his] detailed grievances and appeals against the punitive measures of being placed in segregation, losing his job, losing his wages and losing his goodtime have been denied and his administrative remedies have been exhausted." (Document No. 26 at p. 12).  Additionally, in the Facts Section of his Verified Amended Complaint, Plaintiff details his grievance filing history and attaches relevant documents including grievance forms, letters of appeal and related documents.  (Id. at pp. 8-12). Although Defendants concede that Plaintiff filed grievances in 2008 and 2009 related to events alleged in the Amended Complaint, they contend that many of the claims asserted by Plaintiff are not within the scope of his grievances, and thus are unexhausted and subject to dismissal. Viewing the evidence regarding exhaustion submitted by Defendants and that contained in Plaintiff's Verified Amended Complaint and appended Exhibits in the light most favorable to Plaintiff as I must under Rule 56, Defendants have simply not made a conclusive showing of

failure to exhaust at this stage which would allow the Court to conclude as a matter of law that they have met their burden of proof as to the affirmative defense of failure to exhaust. Thus, I recommend that Defendants' alternative Motion for Summary Judgment on Exhaustion Grounds be DENIED without prejudice.

**Conclusion**

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss (Document No. 31) be GRANTED in part and DENIED in part as provided herein. In particular, I recommend that Counts II, III, IV, V (as it relates to Article 1, § 2 of the R.I. Constitution) and VII of Plaintiff's Amended Complaint be DISMISSED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 17, 2012